**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENNIS ANTHONY HALL,

      Petitioner,                 Civil No. 2:10-CV-11252
                                    HONORABLE DENISE PAGE HOOD
v.                                 UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Dennis Anthony Hall, ("Petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed *pro se*, petitioner challenges his convictions for second-degree murder, M.C.L.A. 750.317; felonious assault, M.C.L.A. 750.82; felon in possession of a firearm, M.C.L.A. 750.224f; three counts of possession of a firearm in the commission of a felony [felony-firearm], M.C.L.A. 750.227b; and being a fourth felony habitual offender, M.C.L.A. 769.12.  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

      Petitioner was originally charged with first-degree murder, felonious

assault, felon in possession of a firearm, three counts of felony-firearm, and being a fourth felony habitual offender.  Following a jury trial in the Oakland County Circuit Court, petitioner was convicted of the lesser included offense of second-degree murder and guilty as charged on the remaining offenses.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from two connected incidents that occurred on December 30, 2005.  The prosecution's theory was that defendant first feloniously assaulted David Smith at 303 Going Street in Pontiac, and then later shot at a person he believed to be Smith at 24 Short Street in Pontiac, mistakenly shooting his girlfriend's son, Bernard Williams, killing him.
>
> According to prosecution witnesses, on December 30, 2005, at approximately 6:00 p.m., defendant barged into the home of Ysha Polk at 303 Going Street in Pontiac.  Ernest Polk, Ysha's father, was with defendant at the time.  Defendant, armed with a gun, confronted and grabbed David Smith and asked him "where is my s* *t?" or something along those lines.  Smith denied taking any of defendant's property and ran out of the house.  After Smith ran out, defendant informed Ysha Polk that Smith had taken some of his CDs and that Smith, Ysha's boyfriend, was going to get her killed.  Defendant left and Smith then returned to Polk's house.  According to Smith, he remained there for 20 minutes, obtained a ride home from his cousin, and then he and his cousin returned to Polk's home several hours later.  Smith's burgundy Chevy Lumina remained at Polk's house until Smith drove it home early the next morning.
>
> According to defense witnesses, earlier in the day Mark Johnson informed defendant that he saw Smith in front of defendant's home. Defendant then went home and discovered that it had been broken into and various items stolen.  Defendant put "two and two together" and went looking for Smith to get his property back.  Defendant went to

2

Ernest Polk to seek assistance in this effort.  Defendant, Ernest Polk, and the eventual homicide victim, Bernard Williams, subsequently went looking for Smith, eventually arriving at Ysha Polk's home.  Smith's car was parked in front of the house.  Defendant looked in the car and saw some of the items that had been stolen from his home.  The three men went to the door of Ysha Polk's home, and defendant confronted Smith, but Smith denied taking defendant's items.  Defendant testified that he and Smith briefly tussled and that Smith threatened to "f* *k him up" after defendant threatened to contact the police.  Smith then ran away.

Defendant, Ernest Polk, and Bernard Williams then left Ysha Polk's home, and defendant dropped Williams off at a restaurant.  From there, defendant and Ernest Polk proceeded to drive to the home of defendant's girlfriend, Samantha Jones, at 24 Short Street.  Jones was Williams's mother and Williams also resided at the home.  At Jones's house, defendant, Jones, and Ernest Polk sat at the kitchen table discussing the break-in of his home and the earlier confrontation with Smith.  Jones's other children, Brandon Williams, Terrance Tucker, Jr., and Mercedes Tucker were also present at the time.  Some occupants of the home heard a gunshot, and defendant and Tucker heard a car pull up to the house.  Jones looked out the window and supposedly saw a burgundy Lumina.  Defendant then said, "Here these n* * * * *s come" or "Here they go."  According to Tucker, defendant pulled out a gun, cocked it back, and aimed it toward the back door.  At some point, defendant said, "Come on with it, motherf* * * *r" or something to that effect.  People fled to the rear of the house.  Multiple gunshots were heard from inside the home.  Ernest Polk testified that defendant fired three shots at the side door.  Polk could not see who defendant was firing at, nor did he see the bullets hit anyone, because by that time he was running away from the area.  In the meantime, Williams had arrived at the home and was struck by gunfire and killed.

Terrance Tucker, Sr., Williams's stepfather, was outside the home around the time the incident occurred.  He arrived at 24 Short Street and pulled up into the driveway in his van, behind defendant's vehicle.  He came over that evening to visit his children, Terrance Tucker, Jr., and Mercedes Tucker.  When Tucker Sr. observed that defendant was there, he decided not to go in.  Instead, he turned up the music in his van and sat there in the driveway.  He then saw Bernard Williams walking down the street with two of his friends.  Tucker Sr. conversed briefly with Williams and asked him to tell Brandon to come outside.

3

Bernard Williams and the other two men then walked together past the side of the house toward the back door. Tucker Sr. testified that he next observed one of the men run past him down Short Street, and he saw the other man run toward the back of the house. Tucker Sr. then witnessed the side door swing open and a man standing there with a gun in his hand. Tucker Sr. did not get a good look at the man because his focus was on the gun, and he could not say whether the man was defendant, who he knew from past interactions. Tucker Sr. ducked down and backed out of the driveway. He saw the man with the gun go back into the house. Tucker Sr. had not heard any noises while he sat in his van because the van's music was turned up so loud; he also saw no other vehicles while he was sitting in his van. Tucker Sr. later caught up with one of the men who had run off, and that person was highly distraught and informed him that they had walked into the house and guns started firing.

Defendant adamantly denied ever shooting a gun, and he claimed that he never had a weapon. According to defendant, he ran to the back of the house with everyone else after hearing a gunshot, a commotion at the side of the house, and someone saying "Where that motherf* * * *r at?" As he was lying down behind a door, defendant heard a scuffle and gunshots in the house. [1]

*People v. Hall,* No. 273908, * 1-3 (Mich.Ct.App. October 21, 2008).

Petitioner's conviction was affirmed on appeal. *Id.*; *lv. den.* 483 Mich. 915 (2009); *reconsideration den.* 483 Mich, 1021 (2009).

Following his direct appeal, petitioner filed what he labeled as a motion to vacate his judgment of sentence being filed pursuant to M.C.R. 2.119. In this motion, petitioner claimed that the trial court had no jurisdiction over his felonious assault charge. Petitioner also asked the trial court not to treat his motion as being

---

[1]   Jones corroborated defendant's testimony that he did not have a weapon at her house and that he ran from the kitchen with everyone else. (Footnote original).

4

a motion for relief from judgment being filed pursuant to M.C.R. 6.500, *et. Seq.*, and requested the trial court judge to return the motion to him if he were inclined to do so.  The trial judge declined petitioner's request, treated the motion as a motion for relief from judgment filed pursuant to M.C.R. 6.500, *et. Seq.,* and denied relief pursuant to M.C.R. 6.508(D)(3). *People v. Hall,* No. 06-206890 (Oakland County Circuit Court, March 15, 2010).  Petitioner never appealed the denial of this motion to the Michigan appellate courts.

On March 22, 2010, petitioner filed an application for writ of habeas corpus, in which he sought habeas relief on the claims that he raised in the Michigan appellate courts on his direct appeal.  Petitioner also filed a motion to hold the habeas petition in abeyance so that he could return to the state courts to raise additional claims that had not been exhausted with the state courts.  On April 27, 2010, this Court held the petition in abeyance so that petitioner could return to the state courts to exhaust additional claims.

Petitioner then filed a motion for relief from judgment, which the trial judge denied on the ground that M.C.R. 6.502(G) prohibits the filing of second or successive motions for relief from judgment unless there has been a retroactive change in the law or newly discovered evidence.  The judge further found that none of petitioner's claims alleged a retroactive change in the law or newly discovered evidence. *People v. Hall,* No. 06-206890 (Oakland County Circuit Court, September 22, 2010).  The Michigan appellate courts likewise denied

5

petitioner's post-conviction appeal on the ground that pursuant to M.C.R.

6.502(G), a defendant may not appeal the denial of a successive motion for relief

from judgment. *People v. Hall,* No. 302915 (Mich.Ct.App. September 13, 2011);

*lv. den.* 492 Mich. 852 (2012).

On October 26, 2012, this Court lifted the stay of proceedings and

permitted petitioner to file an amended habeas petition. In his original and

amended habeas petitions, petitioner seeks habeas relief on the following twenty

one grounds:

> I. Petitioner was denied the effective assistance of counsel by his counsel's failure to cross-examine witness Ernest Polk and by his failure to call the defense private investigator to testify.
>
> II. Petitioner was denied the effective assistance of counsel by his counsel's failure to move for a directed verdict on first-degree murder. And the trial court should have dismissed the first-degree murder charge *sua sponte.*
>
> III. The trial court erred by not allowing a jury instruction on voluntary manslaughter as a lesser included offense.
>
> IV. The prosecutor committed misconduct by telling the jury it would have an easier time convicting if it considered inadmissible hearsay testimony.
>
> V. Not all elements of second-degree murder were established beyond a reasonable doubt because transferred intent cannot be used—it violates due process.
>
> VI. Petitioner was denied the effective assistance of counsel by his counsel's advice to him to perjure himself and say he did not have a gun and did not shoot, denying petitioner the ability to establish a factual basis to support voluntary manslaughter as a lesser included offense.

6

VII. Petitioner was denied due process by the use of transferred intent and by the denial of the jury instruction on voluntary manslaughter.

VIII. Petitioner was denied due process by the trial court's denial of his motion to sever four of the charges into a separate trial.

IX. The incorrect sentence guidelines range was used because the PRV and OV scores were inaccurate.

X. The trial court erred by finding Petitioner's June 17, 2010 motion for relief from judgment (MRJ) a "successive" MRJ when it was the first one filed.

XI. The trial court had no jurisdiction on the felonious assault charge because the victim, David Smith, did not sign a complaint.

XII. Petitioner was denied the effective assistance of counsel by his counsel's failure to use his favorable polygraph results at trial.

XIII. The prosecutor committed misconduct by using perjury from David Smith.  Petitioner's counsel was ineffective for failing to object.

XIV. Petitioner was denied due process because he was never arraigned on felonious assault.

XV. Petitioner was denied due process because the preliminary examination was for a home invasion charge yet led to a bindover on an entirely different charge, felonious assault.

XVI. The prosecutor committed misconduct by not sharing in advance with the defense evidence used to impeach witnesses.

XVII. Counsel was absent at a critical phase when the jury asked a question during deliberations.

XVIII. The trial court used facts not in evidence, the polygraph results, at sentencing.

XIX. Petitioner was denied the effective assistance of counsel by his counsel's failure to object to the lack of jurisdiction, arraignment, and proper bind over for the felonious assault charge.

7

XX. Petitioner was denied the effective assistance of appellate counsel for failing to raise the claims raised by Petitioner in his MRJ.

XXI. The cumulative effect of errors deprived Petitioner of a fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

8

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

9

"[I]f this standard is difficult to meet, that is because it was meant to be."

*Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a

federal court to grant habeas relief only "in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with" the

Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that

habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." *Id.*

(citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,

concurring in judgment)).  A "readiness to attribute error [to a state court] is

inconsistent with the presumption that state courts know and follow the law."

*Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his

claim "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  Claims # 1, # 2, and # 6.  The ineffective assistance of counsel/directed verdict claims.**

The Court will consolidate petitioner's first, second, and sixth claims

10

together for judicial clarity, because they all allege that petitioner was deprived the effective assistance of trial counsel.  The Court will also consider the part of petitioner's second claim involving the trial court's failure to *sua sponte* direct a verdict on the original first-degree murder charge because it relates to his ineffective assistance of counsel claim.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting

11

*Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar

12

is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" seven years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his first claim, petitioner initially alleges that trial counsel was ineffective for failing to properly cross-examine or impeach Ernest Polk.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial

tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Petitioner initially claims that trial counsel was ineffective in failing to question Polk about the fact that he was using illegal drugs on the night of the shooting and was "out of it," even though Polk admitted that he was a drug user. Petitioner ignores the fact that his defense counsel called Mark Stevens Johnson to testify as a defense witness. Johnson testified that he and Polk had spent the day of the shooting smoking crack cocaine together. (Tr. 9/5/06, p. 34). It is within the scope of appropriate trial strategy to present a rebuttal witness rather than to cross-examine a prosecution witness. *See Bruns v. Thalacker,* 973 F. 2d 625, 630 (8th Cir. 1992). Petitioner has failed to show that his trial counsel's decision to call a defense witness to testify that Polk had used crack cocaine on the day of the incident, rather than to cross-examine him about whether he had been using crack cocaine on the day in question, was legitimate trial strategy.

Petitioner further claims that his trial counsel was "non-aggressive" in his cross-examination of Polk and that counsel was also ineffective for failing to impeach Polk with prior convictions for theft or dishonesty which would have been admissible for such a purpose pursuant to M.R.E. 609.

The Michigan Court of Appeals rejected petitioner's claim:

Defendant's argument regarding failure to impeach Polk on the basis of inconsistent trial and preliminary examination testimony does not merit reversal, where the jury was indeed made aware that Polk's trial

14

testimony, in which he stated that he had not heard a gunshot from outside the home before defendant fired his gun, was inconsistent with Polk's testimony at the preliminary examination. Therefore, there was no prejudice. Moreover, defendant's claim that trial counsel failed to impeach Polk with prior convictions for crimes involving theft and dishonesty lacks merit. The prosecutor, in posttrial proceedings, established to the court's satisfaction that Polk's criminal record revealed no such criminal history falling within the time limit set forth in MRE 609(c), which court rule addresses impeachment by evidence of convictions.

*Hall,* Slip. Op. at * 3-4.

In the present case, defense counsel brought out on cross-examination that Polk had a history of using cocaine. Counsel also confronted Polk with inconsistencies between his preliminary examination and his trial testimony. There is no evidence that Polk had any convictions that would have been admissible pursuant to M.R.E. 609(c) to impeach his credibility. Defense counsel did not perform ineffectively by not more forcefully cross-examining Ernest Polk, particularly when the effect of further probing is entirely speculative on petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012); *cert. den. sub. nom. Jackson v. Robinson,* 133 S. Ct. 983 (2013).

In his first claim, petitioner also alleges that counsel was ineffective for failing to call Kenneth Quisenberry, petitioner's private investigator, as a witness.

The Michigan Court of Appeals rejected this claim:

With respect to investigator Quisenberry, defendant's affidavit simply indicates that Quisenberry had "valuable relevant information which would have aided the jury in their deliberations." The failure to call a witness may constitute ineffective assistance of counsel if it deprives

15

the defendant of a substantial defense.   Here, defendant has completely failed to explain what information Quisenberry had in his possession that would have changed the outcome of the trial or that would have assisted in establishing a substantial defense.

*Hall,* Slip. Op. at * 4 (internal citation omitted).

Petitioner failed to provide any affidavits from Mr. Quisenberry to either the state courts or to this Court concerning his proposed testimony and willingness to testify on petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of this portion of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavits sworn by Mr. Quisenberry.  Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witness would have been able to testify and what the content of Mr. Quisenberry's testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call this witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007).  Petitioner is not entitled

16

to relief on his first claim.

In his second claim, petitioner contends that the trial court erred in failing to *sua sponte* direct a verdict on the original first-degree murder charge because there was insufficient evidence of premeditation and deliberation to submit this charge to the jury.  As part of his second claim, petitioner also alleges that his trial counsel was ineffective for failing to move for a directed verdict on the original first-degree murder charge.

With respect to the first-degree premeditated murder charge, petitioner was convicted of the lesser included offense of second-degree murder.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis original)*; See also Aldrich v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004).  A number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Aldrich,* 327 F. Supp. 2d at 761; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D.

17

Mich. 2001); *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D.Mich. 2002)(finding this claim cognizable).  In light of the fact that petitioner was acquitted of the first-degree premeditated murder charge and only found guilty of the lesser included offense of second-degree murder, any error in submitting the first-degree premeditated murder charge to the jury would not entitle petitioner to habeas relief. *See King v. Trippett*, 27 Fed. Appx. 506, 510 (6th Cir. 2001)(Petitioner who alleged that the trial court improperly refused to enter a directed verdict on his armed robbery charge, even though the jury subsequently acquitted him on that charge, failed to state a claim sufficient for habeas corpus relief).  Petitioner would not be entitled to relief on his claim that the trial court erred in failing to direct a verdict of acquittal on the first-degree murder charge.

This Court further notes that "[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004)(internal quotation omitted).  In light of the fact that petitioner was acquitted of the first-degree murder charge, he was not prejudiced by counsel's failure to move for a directed verdict on that charge, counsel was not ineffective for failing to move for a directed verdict.

In his sixth claim, petitioner claims that his counsel was ineffective for encouraging him to testify falsely that he did not fire a weapon on the night in question, as opposed to testifying that he shot towards the door of the house

18

because he believed that David Smith was coming after him.  Petitioner claims

that had he testified in such a manner, there would have been a factual basis for

the court to instruct the jurors on the lesser offense of voluntary manslaughter.

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant also argues that trial counsel was ineffective because he advised defendant to falsely testify that he did not fire a weapon and, as a result, the trial court did not give a voluntary manslaughter instruction and the jury looked unfavorably on defendant.  Our review is limited to the record because no *Ginther*[2] hearing occurred. *People v. Williams*, 223 Mich.App. 409, 414, 566 N.W.2d 649 (1997). There is no record support for defendant's contention, and we decline to remand for an evidentiary hearing on the basis of defendant's self-serving affidavit.  Even were we to assume that counsel actually advised defendant to lie regarding the firing of the weapon, it is illogical to conclude that defendant would thus feel compelled to take the stand and perjure himself.  The claim that one's attorney told him or her to lie on the stand is not a sound reason to commit perjury under the guise that one was simply following the attorney's legal advice. We are not prepared to reward a defendant with a new trial if the defendant knowingly, voluntarily, and willingly went along with a fabrication in an effort to deceive the trier of fact.

*Hall,* Slip. Op. at * 4-5.

Petitioner is not entitled to habeas relief for several reasons.  First, other

than his self-serving affidavit, petitioner has provided this Court no evidence

which establishes that his attorney advised him to take the stand and deny firing

a gun on the night in question.  Although petitioner points to a polygraph

examination that was taken at his counsel's request and which revealed that

petitioner was being truthful when he told the polygraph examiner that he did not

---

[2]  *People v. Ginther,* 390 Mich. 436; 212 N.W. 2d 922 (1973).

intend to shoot Bernard Williams but shot at the door because he believed that Smith was coming after him, this evidence does not in any way show that counsel advised petitioner to take the stand and testify falsely.

More importantly, courts that have considered the issue have declined to hold that the presentation of perjured testimony by a defendant at the behest of his attorney amounts to the ineffective assistance of counsel or that the defendant should be awarded a new trial for participating in such misconduct. See *Brewer v. Aiken*, 935 F. 2d 850, 859-60 (7th Cir. 1991) ("The purpose of the rule against presenting false evidence is to protect the integrity of the truth-finding function of courts rather than the rights of the defendant. The rule protects the public from allowing defendants to subvert the criminal justice system through fabricating evidence.... It would be absurd to create a rule allowing a defendant to go free if perjured testimony succeeds while at the same time providing for a new trial if the witness is a poor liar."); *Monegro v. Grenier*, 2004 WL 187129, at * 6 (S.D.N.Y. January 28, 2004)("Even if petitioner did commit perjury on his counsel's advice, we would decline to create a rule that such misconduct amounts to a ground for reversing a conviction"); *People v. Hagood*, 737 N.Y.S.2d 611, 612 (1st Dep't 2002) (noting, in rejecting ineffective assistance claim, that "it is defendant who is ultimately to blame for giving perjured testimony at trial"). Petitioner is not entitled to habeas relief on his sixth claim.

20

**B. Claims # 3 and # 7.  The jury instruction claims.**

The Court will consolidate petitioner's jury instruction claims for judicial clarity.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

21

In his third claim and again in his seventh claim, petitioner contends that the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing *to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)).  A state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.; See also David v. Lavinge,* 190 F. Supp. 2d 974, 986, n. 4 (E.D. Mich. 2002).   *Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001).  The failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

Although petitioner was originally charged with first-degree murder, which carries a sentence of life imprisonment without parole, petitioner was not facing a capital conviction within the meaning of *Beck* that would entitle him to a jury

22

instruction on any lesser included offenses.  In *Scott v. Elo,* 302 F. 3d at 606, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter.  In so ruling, the Sixth Circuit characterized the defendant's first-degree murder charge as being a conviction for a non-capital offense. *Id.*  Several other circuits have concluded that cases in which a defendant receives a sentence of life imprisonment without parole instead of the death penalty should be treated as a non-capital case, as opposed to a capital case, for determining whether due process requires that a trial court is required to instruct jurors on lesser included offenses. *Creel v. Johnson,* 162 F. 3d 385, 390 (5th Cir. 1998); *Pitts v. Lockhart,* 911 F. 2d 109, 112 (8th Cir. 1990)*; Rembert v. Dugger*, 842 F. 2d 301, 303 (11th Cir. 1988); *Trujillo v. Sullivan*, 815 F. 2d 597, 602 (10th Cir. 1987).

Petitioner next contends that the judge erred in instructing the jurors on the theory of transferred intent.  However, as the Court will discuss when addressing petitioner's sufficiency of evidence claim, *infra,* the Michigan Court of Appeals concluded that it was proper under Michigan law for the prosecutor to proceed on a theory of transferred intent under the facts of this case. *Hall,* Slip. Op. at * 5-6.

Federal courts are bound by the state courts' interpretation of their own

23

laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 1975).  The nature of a

particular jury instruction that is given is a matter of state law, and a federal court

is not at liberty to grant a writ of habeas corpus simply because the federal court

finds the state court's decision was incorrect under state law. *Newton v. Million*,

349 F.3d 873, 879 (6th Cir. 2003).  Because the Michigan Court of Appeals

essentially found that it was proper under Michigan law for the jury to be

instructed on the theory of transferred intent, this Court must defer to that

determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542,

558 (6th Cir. 2000).  Petitioner is not entitled to habeas relief on his third and

seventh claims.

### C. Claim # 4.  The prosecutorial misconduct claim.

Petitioner next contends that he was deprived of a fair trial because of

prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(*citing Bowling v.

Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments

will be held to violate a criminal defendant's constitutional rights only if they "'so

infected the trial with unfairness as to make the resulting conviction a denial of

due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly

v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will form

the basis for habeas relief only if the conduct was so egregious as to render the

24

entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner claims that the prosecutor engaged in misconduct by implying that evidence of petitioner's guilt was being hidden from the jurors. In support of this claim, petitioner points to the prosecutor's rebuttal argument in which the

25

prosecutor referred to the preliminary examination transcript and police witness statements but noted that, unfortunately, the materials were not admissible under the rules of evidence.

The Michigan Court of Appeals rejected petitioner's claim:

As the prosecution correctly points out on appeal, there were repeated references throughout the trial to the preliminary examination transcript and witness statements. The prosecutor's commentary on those materials, while maybe better left unsaid, did not deny defendant a fair and impartial trial and did not result in prejudice such that reversal is warranted.

*Hall,* Slip. Op. at * 6.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486. 535 (6th Cir. 2000). In this case, however, petitioner is not entitled to habeas relief on his claim that the prosecutor injected matters that had not been introduced into evidence, because the evidence against petitioner in this case was strong. *See Macias v. Makowski,* 291 F. 3d 447, 453-54 (6th Cir. 2002); *Byrd,* 209 F. 3d at 536. Any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 9/5/06, p. 289). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his fourth claim.

26

**D. Claim # 5. The sufficiency of evidence claim.**

Petitioner next contends that there was insufficient evidence to convict him of second-degree murder because there was no evidence that he intended to kill Bernard Williams and it was improper for the prosecutor to rely on a theory of transferred intent to obtain his conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a

federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The Michigan Court of Appeals rejected petitioner's claim:

We next address defendant's claim that it was improper for the prosecutor to proceed on a theory of transferred intent. We find no merit to this argument.

In *People v. Lawton*, 196 Mich.App. 341, 351, 492 N.W.2d 810 (1992), this Court, quoting *People v. Lovett*, 90 Mich.App. 169, 172, 283 N.W.2d 357 (1979), discussed the doctrine of transferred intent, stating:

"Before defendant can be convicted it must first be shown that he had the intention to cause great bodily harm to someone. Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person."

In other words, a defendant remains culpable even if he intended to shoot someone other than the actual victim. *People v. Youngblood*, 165 Mich.App. 381, 388, 418 N.W.2d 472 (1988). "If the defendant intended to kill one person, but by mistake or accident killed another person, the crime is the same as if the first person had actually been

killed." CJI2d 16.22.

> The prosecution's theory in this case was that defendant intended to shoot Smith, with whom defendant was involved in the earlier altercation, but instead mistakenly shot his girlfriend's son, Bernard Williams. There was no evidence suggesting, nor has defendant ever asserted, that he intended to shoot Williams. Under the doctrine of transferred intent, even though defendant did not intend to shoot Williams, he remains just as culpable for the shooting death if his intent was to shoot Smith instead. The intent to kill still remains, and here, contrary to defendant's assertion, there was sufficient evidence of an intent to kill. It was not improper for the prosecutor to rely on a theory of transferred intent to prove defendant's guilt.

*Hall,* Slip. Op. at * 5-6.

Petitioner is not entitled to habeas relief on his claim that the State of Michigan should not permit the use of the transferred intent doctrine in murder cases. The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. at 690-91. What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). This Court must

29

therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes, including the doctrine of transferred intent. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

Under the doctrine of transferred intent, a "general intent to kill need not be directed at an identified individual or the eventual victim." *People v. Abraham*, 256 Mich. App 265, 270; 662 N.W. 2d 836 (2003); *See also People v. Lawton*, 196 Mich. App. 341, 350-51, 492 N.W. 2d 810 (1992). In the present case, it was unnecessary for the prosecution to show that petitioner intended to kill any specific person to sustain petitioner's conviction for second-degree murder. Petitioner's act of shooting through the door or walls of the house with the intention of killing or injuring David Smith but with the bullets mistakenly hitting and killing Bernard Williams was sufficient evidence to convict petitioner of second-degree murder under a theory of transferred intent. The Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was not an unreasonable application of *Jackson. See Grandison v. Corcoran,* 78 F. Supp. 2d 499, 516 (D. Md. 2000).

Even absent transferred intent, the evidence in this case was sufficient for a rational trier of fact to find petitioner guilty of second-degree murder. Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010)(citing

30

*People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)).  "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980)).  Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123; 631 N.W.2d 67 (2001)).

In the present case, petitioner shot a firearm through the door or wall of a house while knowing that persons were outside.  This act of discharging a firearm through a wall or door of a house while knowing or having reason to believe that persons were outside was at a minimum an act that was done in wanton and wilful disregard of the likelihood that it would kill or cause great bodily harm to persons outside.  As such, the evidence was sufficient to convict petitioner of second-degree murder.  Petitioner is not entitled to habeas relief on his fifth claim.

### E. Claim # 8.  The misjoinder claim.

Petitioner next claims that his due process rights were violated by the trial court's denial of his motion to sever the felonious assault and the related charges from the murder charge because they arose out of two separate events.

31

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986).  Misjoinder rises " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.*  Another judge in this district, in rejecting a similar claim, indicated that he had "found no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him." *Rodriguez v. Jones,* 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009).

In considering whether the denial of severance of charges amounted to an error warranting relief in a habeas proceeding, the issue is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Davis v. Coyle,* 475 F. 3d 761, 777 (6th Cir. 2007).  In order to obtain federal habeas relief, a habeas petitioner must show that the misjoinder of separate criminal charges in a single trial in state court resulted in prejudice so great as to deny the petitioner his right to a fair trial. *Id.*  To establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *U.S. v. Saadey*, 393 F. 3d 669, 679 (6th Cir. 2005).  A jury is presumed capable of considering each criminal count separately and any prejudice arising from trial of joined offenses may be cured

by limiting instructions. *U.S. v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002).  "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *U.S. v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007).

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W. 2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W. 2d 682 (1994)).  Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR 6.120(B). MCR 6.120(B) defines related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

In the present case, ir was not fundamentally unfair to join the two sets of offenses because they both occurred on the same day and the evidence showed that the earlier confrontation between petitioner and Smith "precipitated and had

a bearing on the later shooting incident." *Hall,* Slip. Op. at * 5.  Because the two

events were related, petitioner's due process rights were not violated by the

judge's denial of petitioner's motion for severance.  Petitioner is not entitled to

habeas relief on his eighth claim.

**F. Claim # 9.  The sentencing guidelines claim.**

Petitioner next contends that the trial judge improperly scored several of

the offense and prior records variables under the Michigan Sentencing

Guidelines.

Petitioner's claim that the state trial court incorrectly scored or calculated

his sentencing guidelines range under the Michigan Sentencing Guidelines is not

a cognizable claim for federal habeas review, because it is basically a state law

claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v.

White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Simpson v. Warren*, 662 F. Supp. 2d

835, 851 (E.D. Mich. 2009).  "Petitioner has no state-created interest in having

the Michigan Sentencing Guidelines applied rigidly in determining his sentence."

*See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing

*Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).  "[I]n

short, petitioner had no federal constitutional right to be sentenced within

Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347

F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in

calculating his guideline score would not merit habeas relief. *Id.*  Petitioner is not

34

entitled to habeas relief on his ninth claim.

### G.  Claims # 10-21.  Petitioner's remaining claims are procedurally defaulted.

Respondent contends that petitioner's remaining claims are procedurally

defaulted because he raised them only for the first time in his second post-

conviction motion for relief from judgment and the trial court, the Michigan Court

of Appeals, and the Michigan Supreme Court relied on M.C.R. 6.502(G) to reject

petitioner's post-conviction motion.

When the state courts clearly and expressly rely on a valid state

procedural bar, federal habeas review is also barred unless petitioner can

demonstrate "cause" for the default and actual prejudice as a result of the

alleged constitutional violation, or can demonstrate that failure to consider the

claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his

procedural default, it is unnecessary for the court to reach the prejudice issue.

*Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case,

where a constitutional error has probably resulted in the conviction of one who is

actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default.

*Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically

file only one motion for relief from judgment with regard to a criminal conviction. *See Banks v. Jackson,* 149 Fed. Appx. 414, 418 (6th Cir. 2005); *Mohn v. Bock,* 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to *People v. Ambrose*, 459 Mich. 884; 587 N. W. 2d 282 (1998)).  However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks,* 149 Fed. Appx. at 418; *Mohn,* 208 F. Supp. 2d at 801; *Hudson,* 68 F. Supp. 2d at 800-01.

The trial court rejected petitioner's second motion for relief from judgment pursuant to M.C.R. 6.502(G), because petitioner had already filed a motion for relief from judgment and had failed to either raise a claim based on a retroactive change in the law or present new evidence to the trial court which would entitle him to file a second motion for relief from judgment pursuant to M.C.R. 6.502(G)(2).  The Michigan appellate courts likewise rejected petitioner's appeal for lack of jurisdiction pursuant to M.C.R. 6.502(G), because a defendant cannot appeal the denial or rejection of a successive motion for relief from judgment.

Petitioner filed his first post-conviction motion in 2010.  At the time that petitioner filed his first motion, M.C.R. 6.502(G) was a firmly established and regularly followed procedural rule that would be sufficient to invoke the doctrine of procedural default. *See Porter v. Smith,* 197 F.Supp.2d 827, 832-33 (E.D.

36

Mich. 2002). Because petitioner's twelve remaining claims were rejected by the Oakland County Circuit Court and the Michigan appellate courts pursuant to M.C.R. 6.502(G), the claims are procedurally defaulted. *Id.*

Petitioner argues that the bar contained in M.C.R. 6.502(G) on the filing of successive post-conviction motions for relief from judgment should not apply in this case because he did not intend for his first post-conviction motion to vacate sentence to be treated as a motion for relief from judgment under 6.500 and explicitly stated as much in his first post-conviction motion, even asking the judge to return the motion if he was going to treat the motion as a 6.500 motion.

The trial judge did not err in treating petitioner's first post-conviction motion as being a motion for relief from judgment being brought pursuant to M.C.R. 6.500, *et. Seq.* M.C.R. 6.501 states that unless otherwise specified, a judgment of conviction and sentence entered by the circuit or Recorder's court that is not subject to appellate review under subchapters 7.200 or 7.300 may be reviewed only in accordance with the provisions of this subchapter. When petitioner filed this first post-conviction motion, he had already completed his direct appeal. Under M.C.R. 7.205(F)(2), a criminal defendant in Michigan is limited to a single appeal by right or leave from a conviction. *See People v. Jackson,* 465 Mich. 390, 396; 633 N.W. 2d 825 (2001). Petitioner's motion to vacate sentence had to be considered a post-conviction motion. Under Michigan law, regardless of its characterization, a postappeal motion brought by

37

a criminal defendant in Michigan is reviewable only as a motion for relief from judgment brought pursuant to M.C.R. 6.500, *et. seq.* See *People v. Kincade,* 206 Mich. App. 477, 482; 522 N.W. 2d 880 (1994); *See also Hudson v. Martin,* 68 F. Supp. 2d at 800.  The trial court did not err in treating petitioner's first post-conviction motion as a motion for relief from judgment brought pursuant to M.C.R. 6.500, *et. Seq.*

Michigan law does not require a trial judge to give a defendant advance notice that he or she will characterize a defendant's post-conviction motion as a 6.500 motion nor is there a requirement that the judge simply return a mislabeled post-conviction motion to the defendant or permit him to withdraw the motion rather than adjudicate it.  The Court is aware that in *Castro v. United States,* 540 U.S. Ct. 375 (2003), the United States Supreme Court held that a federal district court may not recharacterize a *pro se* litigant's motion as the litigant's first motion to vacate sentence under 28 U.S.C. § 2255 unless the court (1) informs the litigant of its intent to recharacterize the motion, (2) warns the litigant that the recharacterization will subject subsequent § 2255 motions to the "second or successive" restrictions of § 2255 ¶ 8, and (3) provides the litigant with an opportunity to withdraw or to amend the filing. *Id.* at 383.  The Supreme Court's ruling in *Castro,* however, applies only to federal courts' interpretation of a federal prisoner's *pro se* motions and has no application to a state court's construction of a state prisoner's post-conviction motions. *See Flowers v.*

38

*Booker*, 2006 WL 2421315, * 2 (E.D. Mich. August 22, 2006).  *Castro* was

decided as a matter of the Supreme Court's supervisory power over the lower

federal courts and is not binding on the state courts *See Buelas v. Wolfenbarger*,

580 F.3d 403, 407 (6th Cir. 2009).  The state court judge was not constitutionally

required to give petitioner advance notice of his intent to recharacterize

petitioner's first post-conviction motion as a motion for relief from judgment being

filed pursuant to M.C.R. 6.500, *et. Seq.,* nor was he required to allow petitioner

to withdraw the motion prior to adjudicating it.  It was proper for the state courts

to consider the motion for relief from judgment in which petitioner filed his tenth

through twenty first claims as a successive motion for relief from judgment that

was barred by M.C.R. 6.502(G).  Petitioner's remaining claims are procedurally

defaulted because they were raised in petitioner's second motion for relief from

judgment and the trial and appellate courts relied on M.C.R. 6.502(G) to reject

his motion.

Petitioner has failed to allege any reasons to excuse the procedural

default of his claims.  Appellate counsel's failure to raise these claims on

petitioner's direct appeal is immaterial, because petitioner could still have

exhausted these claims properly in his first state post-conviction motion. *See*

*See Gadomski v. Renico,* 258 Fed.Appx. 781, 784 (6th Cir. 2007).  In addition, a

habeas petitioner's *pro se* status and ignorance of rights at the state court level

does not constitute cause which would excuse the procedural default. *Hannah v.*

*Conley,* 49 F. 3d 1193, 1197 (6th Cir. 1995).  Petitioner has failed to establish

cause to excuse his procedural default.  When cause has not been shown, the

Court need not consider whether actual prejudice has been demonstrated. *See,*

*e.g., Smith v. Murray*, 477 U.S. at 533*.*

Additionally, petitioner has not established that a fundamental miscarriage

of justice has occurred.  The miscarriage of justice exception requires a showing

that a constitutional violation probably resulted in the conviction of one who is

actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual

innocence' means factual innocence, not mere legal insufficiency." *Bousley v.*

*United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual

innocence] requires petitioner to support his allegations of constitutional error

with new reliable evidence -- whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence -- that was not

presented at trial." *Schlup*, 513 U.S. at 324.  Petitioner's sufficiency of evidence

claim (Claim # 5) is insufficient to invoke the actual innocence exception to the

procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D.

Mich. 2003).  Because petitioner has not presented any new reliable evidence

that he is innocent of these crimes, a miscarriage of justice will not occur if the

Court declined to review petitioner's remaining procedurally defaulted claims. *Id.*

Finally, assuming that petitioner had established cause for his default, he

would be unable to satisfy the prejudice prong of the exception to the procedural

40

default rule, because his tenth through twenty first claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner has failed to show that his tenth through twenty first claims have any merit. Petitioner is not entitled to habeas relief on his remaining claims.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a

---

[3]   Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an

appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed.

R.App.24 (a).  "Good faith" requires a showing that the issues raised are not

frivolous; it does not require a showing of probable success on the merits.

*Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this

Court's resolution of petitioner's claims, the issues are not frivolous; therefore,

an appeal could be taken in good faith and petitioner may proceed *in forma*

*pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of

habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner will be granted leave to appeal

*in forma pauperis.*

> S/Denise Page Hood
> Denise Page Hood
> Chief Judge, United States District Court

Dated:  March 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel
of record on March 31, 2016, by electronic and/or ordinary mail.

> S/LaShawn R. Saulsberry
> Case Manager